64 535
118 341

# Wilcox, Gibbs & Co. *v.* Henderson.

*Action on Promissory Note, by Payee against Maker ; Pleas, Failure of Consideration, and Fraud.*

1. *Relevancy of evidence, affecting consideration of note.*—In an action on a note given for the price of manipulated guano, sold by plaintiffs to defendant, printed circulars and posters, publicly displayed and distributed, purporting to give the chemical analysis and ingredients of the guano sold by plaintiffs, are competent evidence for the defendant, as tending to show that these statements were part of the stipulations and inducements of the contract ; and the fact that they were dated and distributed several years before the sale to the defendant, does not affect their admissibility as evidence, in the absence of proof of any change in the composition or manufacture.

2. *Same; declarations of agent ; representations of quality, as warranty.*—The sale to defendant having been made by plaintiffs' agent, it is competent for the defendant to prove that said agent, in making the sale, "told defendant that he had authority from plaintiffs to warrant theirs to be good guano ;" but such statement does not, as matter of law, amount to a warranty ; and, even if believed, it does not necessarily constitute a defense to an action on the note.

3. *Same; same.*—As evidence tending to show the quality of the article sold, the defendant may adduce the testimony of other planters, who bought from plaintiffs' said agent during the same year, as to its worthlessness ; and plaintiffs may, in like manner, prove its worth and good quality, by the testimony of other purchasers.

4. *Representations of quality, as constituting warranty or fraud.*—A representation by the seller, as to the quality of an article sold by him, when merely the expression of an opinion, does not amount to a warranty ; nor does it constitute a defense to an action for the price, unless he knew it to be untrue, or stated it as a fact when he had no knowledge or well-founded belief that it was true ; and this rule equally applies to representations of an agent in negotiating a sale.

[Wilcox, Gibbs & Co. v. Henderson.]

5. *Measure of proof.*—The proper measure of proof, in civil causes, is *reasonable* conviction or satisfaction of the mind : *"clearly* convinced," as applied to the measure of proof required, lays down too exacting a rule.

6. *Burden and sufficiency of proof.*—When the evidence is equally balanced, the verdict of the jury should be for the defendant ; yet, where the plaintiff has made out a *prima facie* case, by introducing the note on which the action is founded, the *onus* is then shifted to the defendant to prove his defense ; and if the evidence as to that is equally balanced, the verdict should be for the plaintiff.

APPEAL from the Circuit Court of Pike.

Tried before the Hon. H. D. CLAYTON.

This action was brought by the appellants, suing as partners, against John B. Henderson ; was commenced on the 10th September, 1872, and was founded on the defendant's promissory note for $426.30 ; which was dated the 22d January, 1871, and payable to the plaintiffs or order, on or before the 1st day of November next after date ; and which purported to be given " for value received, being for six tons of manipulated guano and expenses on same," and was credited with $50, paid December 20th, 1871. The defendant pleaded— "1st, the general issue ; 2d, no consideration ; 3d, want of consideration ; 4th, failure of consideration ; 5th, fraud and misrepresentation ; 6th, breach of warranty ;" and several other special pleas, alleging that the guano was not inspected, stamped and branded, as required by a statute since repealed. Issue was joined on all these pleas.

On the trial, as appears from the bill of exceptions, the plaintiffs having offered in evidence the note on which the suit was founded, the defendant testified, as a witness for himself, that he bought the guano, for which the note was given, from W. M. Murphree, who was his brother-in-law, " and was also plaintiffs' agent for the sale of their manipulated guano ; and who proposed to sell the same to defendant, and told defendant that he had authority from plaintiffs to warrant theirs to be good guano ; which statement of said Murphree was an inducement to defendant to buy said guano, and thereupon he purchased the same." He further described the quality of his land, the manner in which he plowed and prepared it, using the guano on some of the rows of cotton, and leaving others without it ; and added : " I cultivated all of it very well, and could not see any difference in the cotton, or its yield, in the rows where there was guano, and where there was none. It was of no benefit whatever to me." The plaintiffs objected " to all the testimony of said witness, as set out above, as to how he prepared his land, and how he applied said guano, and also to the statement that he derived no benefit from the use of said guano, upon these grounds : that the consideration is expressed in the note, and the de-

[Wilcox, Gibbs & Co. v. Henderson.]

fendant has not shown that any fraud, false representation, or deceit was practiced on him, to induce him to give said note; and because the evidence is, in legal effect, changing, or tends to vary or change, the written contract of the parties." The court overruled the objections, and admitted the evidence; and the plaintiffs excepted. The defendant also introduced as a witness Poney Henderson, his brother, who was a farmer by occupation, and who testified that he examined the defendant's cotton in the field on which he had used the guano, several times during the season, and could see no difference between the rows on which the guano had been applied and those on which it had not been used. "Plaintiffs made the same objections to the testimony of this witness, as to the testimony of the defendant himself; which objections the court overruled, and the plaintiffs excepted."

W. M. Murphree was then introduced as a witness for the plaintiffs, and testified: "I sold to defendant the guano, for which the note sued on was given. I never warranted nor represented to him, nor to any one else, that Wilcox, Gibbs & Co.'s guano was a good guano. I represented and warranted it to be what the analysis in the printed circulars that year represented it to be. I was authorized to warrant it, and did generally warrant it, to be what the analysis in the printed circulars showed; and while I do not recollect what conversation I had with the defendant while negotiating the sale to him, and have no recollection of what was said, only I know I never represented to him, or to any one else, that said guano had or possessed any qualities but those shown in the analysis in the printed circulars and advertisements of that year." On cross-examination, this witness was shown a pamphlet published in the year 1867, containing the various circulars and advertisements of the plaintiffs' guanos; and testified, as to it, "that said pamphlet was not one of plaintiffs' circulars for the year 1871, and that he did not know whether the pamphlet shown him was circulated as an advertisement for or during the year 1871." The defendant then offered in evidence "two tables of analyses of Wilcox, Gibbs & Co.'s manipulated guano," as contained in the said pamphlet. The plaintiffs objected to their admission as evidence, "because said pamphlet was not shown to have been circulated by them, or by their agents, as an advertisement for the year 1871; and because said analyses are irrelevant and illegal, and were not offered in connection with all that was printed on the same pages of said pamphlet." The court overruled the objections, and the plaintiffs excepted.

The plaintiffs then read in evidence, without objection, the remainder of the pages of said pamphlet on which said analy-

ses were printed, and also some extracts from a printed pamphlet circulated by them in 1871, as follows: "We guarantee our guanos to be fully up to the standard of our representations by analysis, and publish in this circular copies of analysis by eminent chemists, showing the constituents of the guanos, together with reports from planters, giving the practical results from their use; upon which our representations and this guaranty are made. But we *do not guarantee* any given results from their use. We can only guarantee the purity of the guanos, and this we do to the fullest extent," &c. "Plaintiffs then offered to prove, by Felix Walker, James Davidson, John Hamill, and other farmers residing within from five to ten miles of the defendant in 1871, that they bought of said Wilcox, Gibbs & Co.'s manipulated guanos, from plaintiffs' agent in Troy, Alabama, and used it on their crops of corn and cotton in 1871, with good results; that it paid them, in the increased yield of their crops, at least one hundred per-cent." The court excluded this testimony, on the defendant's objections, and the plaintiffs excepted.

"The court charged the jury, among other things, that if they believed, from the evidence, that Murphree, the plaintiffs' agent, represented to the defendant that the guano was a good guano, and, from the application and tests of its utility made by the defendant, they believed that it was not a good guano, they will find for the defendant;" also, "that it made no difference whether the representations made by Murphree to the defendant were made willfully or innocently, provided they were untrue, and influenced the defendant in making the purchase." The plaintiffs excepted to each of these charges, and requested the following written charges: 1. "If the evidence is equally balanced, the jury must find for the plaintiffs." 2. "There can be no failure of consideration, when a party gets what he contracts to receive." 3. "The burden of proving that plaintiffs' agent falsely represented the guano to the defendant to be good guano, and that it was not good, is on the defendant; and unless he has clearly and satisfactorily proved the same, the jury must find for the plaintiffs." The court refused each of these charges as asked, but gave the 3d with this qualification: "But the words 'clearly and satisfactorily,' as they appear in this charge, do not mean that the defendant must prove his defense beyond a reasonable doubt: if he has proved that plaintiffs' agent falsely represented to him that it was good guano, reasonably, to your satisfaction, then you must find for the defendant." The plaintiffs excepted to the refusal of each of these charges as asked, and to the qualification added to the third.

The plaintiffs also requested the following charges, which were in writing: 4. " Unless the jury are clearly satisfied, from the evidence, that the plaintiffs' agent falsely and deceitfully represented to the defendant that the particular lot of guano sold to him was good guano, and that in fact it was not good, and that said false representation operated as an inducement, and did induce the defendant to purchase said guano, they must find for the plaintiffs." 5. " Unless the jury are clearly satisfied from the evidence that the plaintiffs' agent falsely represented to the defendant that the particular lot of guano sold to him was good guano, while in fact it was not good, and that the false representation of said agent operated as an inducement, and did induce the defendant to purchase said guano, they must find for the plaintiffs." The court refused each of these charges as asked, but afterwards gave the 5th, " ex mero motu," with this qualification : " But the false representation needs not be confined to the particular lot of guano sold to the defendant : if the false representations were as to the particular kind of guano sold, to-wit, Wilcox, Gibbs & Co.'s manipulated guano, that is sufficient." The plaintiffs excepted to the refusal of each of these charges as asked, and also to the explanation added to the 5th as given.

The plaintiffs also asked the following charge, which was in writing: 6. "Although the jury may believe, from the evidence, that plaintiffs' agent falsely represented to defendant, as an inducement to his purchase of the guano, that it was a good guano, and that he was authorized by plaintiffs to warrant it to be a good guano ; still, if they believe, from the evidence, that defendant used said guano under his cotton, early in April, 1871, and in May following, after his cotton was up and growing, and was being chopped out, told his brother, Pony Henderson, that he was uneasy as to whether the guano was of any value ; and afterwards, on the 22d June, 1871, without raising any objections on account of the worthlessness of the guano, or the alleged false representations, gave the note sued on ; and afterwards, on the 20th December, 1871, paid $50 on said note ; then, by these acts, the defendant waived the alleged deceit, or false representations, and they must find for the plaintiffs." The court refused this charge, also, and the plaintiffs excepted.

The court also gave the following charges, at the instance of the defendant : 1. " If the note sued on was given for guano, sold by plaintiffs' agent to defendant ; if said agent, in making the sale, represented to the defendant that the guano was good ; if the defendant was induced by said representation to buy the guano ; if the defendant, in purchasing the

guano, believed and acted on said representation, and was thereby deceived, and induced to purchase the guano, when otherwise he would not have bought it; if the guano was not good, but worthless, and defendant has derived no benefit from it; then, on this state of facts, the jury must find for the defendant." 2. After stating the facts hypothetically as in the first charge, down to the last clause,—"and if the guano was not good, and was not worth more than the $50, which both parties admit defendant has paid on the note; then, on this state of facts, the jury must find for the defendant." The third charge was in substance and effect, and almost in words, identical with the first. 4. "Although the burden is on the defendant to prove that a deceit was practiced on him, in the sale of the guano; yet, if the jury believe, from the whole evidence, that such deceit was practiced upon him, and that he would not have bought the guano but for this deceit, this belief may authorize them to find in favor of the defendant as to the evidence of such deceit." 5. "The law considers the representation of the seller, or his agent, to be constructively fraudulent, if it was untrue, and its effect has been to impose upon and deceive the purchaser; if it was as to a material matter, and was acted on by the purchaser; if he was injured by it, and would not have made the purchase without such representations." 6. "A purchaser of an article from its manufacturers, or from their agent, has a right to rely upon the representation of its quality made at the sale by such agent; if the article be one which was avowedly manufactured and offered for sale to the public, for a particular use or purpose, and the representations related to its suitableness or fitness for that purpose." The plaintiffs reserved exceptions to each of these charges.

The several rulings of the court on the evidence, the charges given, and the refusal of the charges asked, are now assigned as error.

W. C. OATES, and NORMAN & WILSON, for appellants.

No counsel appeared for the appellee.

STONE, J.—The note sued on shows, on its face, that its consideration was Wilcox, Gibbs & Co.'s manipulated guano, sold by plaintiffs, through their agent, to the defendant. The ingredients, of which this fertilizer was compounded, and the proportions of the several ingredients, together with chemical analyses of the compound, were published in circulars, and displayed in posters to the public, at and before the sale and purchase out of which this action grew. These, we think,

were legitimate instruments of evidence, and tend to show that the seller contracted and held himself bound by such representations of fact, as were thus, as we may presume, made part of the stipulations and inducement of the contract. To hold the seller to a less accountability than this, would be a license to perpetrate the grossest frauds. But this rule is limited to representations of fact, and not of opinion.—*Sledge v. Scott*, 56 Ala. 202 ; *Perry v. Johnson*, 59 Ala. 648. To constitute expressed opinion a ground, or instrument of fraud, it must be knowingly false, made with intent to deceive, and must be accepted and relied on as true.—*Einstein v. Marshall*, 58 Ala. 153.

Three main questions of fact were controverted in the court below : *First*, whether the commodity sold as manipulated guano, was what the circulars and posters represented it to be ; *second*, whether Murphree, the agent making the sale, warranted its quality ; and, *third*, whether the representations and warranty were false. The circulars were offered in evidence by the defendant, the plaintiffs objecting, because they bore date and were circulated in a former year, and not in the year of this sale—1871. The portion of the circulars thus offered and objected to was the tables of the chemists, showing the analysis of the manipulated guano, as compounded by Wilcox, Gibbs & Co. It is no where claimed or shown, in this record, that the constituents or quantities of the ingredients composing the fertilizer known as manipulated guano, sold by these plaintiffs, had been changed. There was no error in receiving this evidence. Neither did the Circuit Court err in allowing the defendant to testify that Murphree, the agent, in making the sale, " told defendant that he (Murphree) had authority from plaintiffs to warrant theirs to be good guano ;" and that thereupon defendant made the purchase. This was competent evidence. Its effect we will consider hereafter.

We think the court erred in excluding the evidence of Felix Walker, James Davidson, and others. The theory, on which the circulars of 1867 were receivable in evidence, is, that manipulated guano, as prepared and sold by these plaintiffs, was compounded after a certain formula. If this was not the rule, and the manipulated guano was manufactured in various ways, or composed of varying ingredients, that fact could have been shown, either for or against the defendant ; and, in this way, the effect of the circular, as evidence, might have been materially changed. If other planters, in 1871, had purchased and used this manipulated guano, sold by Murphree as agent, without profit, or with little profit, we think Henderson should have been allowed to prove that fact, as evi-

[Wilcox, Gibbs & Co. v. Henderson.]

dence tending to show the guano, or fertilizer, was not what it was represented to be. For the same reason, the plaintiffs should have been allowed to prove that their manipulated guano of 1871 was a good guano, or good fertilizer; and the witnesses could have no better foundation for their judgment, than that furnished by their own experiment and trial. This is not the case of proving the quality of one manufactured article, by proof of another similar article, the handiwork of the same mechanic. It is rather proving the quality of a compounded mass, by showing the quality and usefulness of different parcels of it. Just as a chemist would proclaim the analysis of a bulk, when he had, in fact, subjected only fragmentary parts, promiscuously chosen, to scientific tests.

The testimony of Pony Henderson was objected to only as a whole. Much of it was unexceptionable, and we will not dissect it in search of error, not specially brought to our attention by specific exception.

We have held above, that the testimony of the defendant, Henderson, that Murphree, the agent, in making the sale, represented the fertilizer as good guano, was competent evidence. Being parol testimony, however, and not very complete and explicit, it did not, as matter of law, amount to a warranty, nor, if believed, did it necessarily amount to a defense to the action. It may have been merely the opinion of the agent, without any thought of a warranty. If so, then it would not afford matter of defense, unless Murphree stated what he knew or believed to be untrue, and was in fact untrue, or unless he stated it as fact, when he had no knowledge, or well-founded belief it was true, and it turned out to be false. Agents, in making sales, are not permitted to indulge in reckless assertion, and thus deceive and defraud others.—*Perry v. Johnson, supra.*

The charge to the jury, that if they believed, from the evidence, "that Murphree, the agent of the plaintiffs, represented to defendant that the guano was a good guano, and that from the application and tests of its utility made by the defendant, they believed it was not a good guano, then they must find for the defendant," is objectionable. It assumes, as matter of law, that such representation by the agent would amount to a warranty. It was only evidence to be submitted to the jury, and to be weighed by them, in determining whether or not there was a warranty of the fertilizing qualities of the guano. Moreover, the guano may not have been, in strict sense, good, and yet the defendant may have derived some benefit from it. The second paragraph of the charge is also objectionable, in assuming that such representation was, in itself, and necessarily, a warranty.

Of the charges asked by plaintiffs, the first was rightly refused; because, if the testimony was equally balanced, the verdict should have been for the defendant. When the note was read in evidence, this made a *prima facie* case for the plaintiffs, and shifted the burden to the defendants of proving their defense. If the charge asked had been, " If you find the evidence equally balanced on the question of warranty, or on the question whether the guano was such as it was warranted to be, then you must find for the plaintiffs," it would have asserted a correct legal proposition. The second charge asked was calculated to mislead, and was rightly refused on that account. The third, fourth, and fifth charges were rightly refused. Reasonable conviction, or satisfaction of the mind, is the proper measure of proof in civil causes. *Clearly convinced*, lays down too exacting a rule. The explanatory charge to number 3 is faulty, for the reason stated above, in commenting on the first charge given. The postulate of the sixth charge asked, does not necessarily cut off defendant's right of defense. It only presented circumstances for the jury to weigh, in determining whether or not there was, in fact, a failure of the guano to come up to the representation, and whether or not Henderson, when he made the partial payment, was satisfied with the fertilizer. This charge was rightly refused. The first, second, third, and fifth charges, asked by defendant and given by the court, are each faulty, for the reasons stated above.

Reversed and remanded.